UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN R. MOONEY,<br><br>                              Plaintiff,<br><br>       v.<br><br>JO ANNE B. BARNHART, Commissioner of<br>Social Security Administration,<br><br>                              Defendant. | Civil No.   06-CV-0779 L (CAB)<br><br>**REPORT AND RECOMMENDATION RE<br>CROSS-MOTIONS FOR SUMMARY<br>JUDGMENT**<br>**[Doc. ## 6, 8]** |

Plaintiff John R. Mooney ("Plaintiff" or "Mooney") brought this action for judicial review of the decision by an Administrative Law Judge ("ALJ") denying Plaintiff's application for Social Security disability benefits. The ALJ's decision became the final decision of the Commissioner of Social Security on February 1, 2006, when the Appeals Council denied review. (Tr. 4).[1] Plaintiff filed a motion for reversal and/or remand of the ALJ's decision. The Court construes Plaintiff's motion as one for summary judgment. Defendant Jo Anne B. Barnhart filed an opposition and a cross-motion for summary judgment. For the reasons that follow, the undersigned Magistrate Judge recommends that Plaintiff's motion be **DENIED** and Defendant's motion be **GRANTED.**

## II.  FACTS

Plaintiff was born on May 2, 1982. (Tr. 53). He graduated from high school and completed two

---

[1] All references to the evidence are references to the page numbers in the Administrative Record filed with Defendant's Answer. [Doc. # 4].

years of college. (Tr. 72). Mooney previously worked at a fast food restaurant. (Tr. 75). A vocational expert classified Plaintiff's work as a fast food cook and fast food worker. (Tr. 90). Plaintiff last worked on July 4, 2003. (Tr. 150).

### A.    Medical Evidence

Plaintiff has a history of low back pain radiating down to his lower extremity. (Tr. 19). Plaintiff has been followed by Misa Hidaka, M.D. ("Dr. Hidaka") from May 30, 2003. (Tr. 19). On May 30, 2003, Plaintiff saw Dr. Hidaka with complaints of left leg pain. (Tr. 98). Plaintiff apparently requested the examination to be excused from probation work duty for violating a court order. (Tr. 98, 115). Upon neurological examination, Dr. Hidaka found that Plaintiff walked without a limp and could walk on his heels and toes. (Tr. 98). Plaintiff had full strength in his hips, knees and ankles. (Tr. 98). There was no "point tenderness" in Plaintiff's spine. (Tr. 98). There was flattening of the lumbar lordosis. (Tr. 19). A straight leg raising test was positive on the left side. (Tr. 98). Dr. Hidaka recommended that Plaintiff attempt the work duty. (Tr. 98). Plaintiff was prescribed Motrin, and later Vioxx. (Tr. 19).

On a follow-up examination on August 19, 2003, Plaintiff's lumbar flexion was limited secondary to pain. Reflexes, sensation and motor strength remained normal. The diagnosis was chronic back pain with radiculopathy. (Tr. 20). An MRI taken on August 21, 2003, indicated disc herniation at L4/5 compressing the left L5 and probably the L1 nerve root sleeves. (Tr. 94-95). A repeat lumbar MRI taken on February 22, 2005, confirmed the presence of degenerative changes at L4-5 with a small posterior disc protrusion causing impingement in the distribution of the traversing left L5 nerve root. (Tr. 20).

Plaintiff was also followed by Rina Jain, M.D. ("Dr. Jain") from August 8, 2003. A physical examination on that date revealed limitation of lumbar flexion to 60 degrees, and positive straight leg raising on the left at 20 degrees. (Tr. 20). A neurological examination was intact. (Tr. 20). An MRI on August 21, 2003, revealed a moderate sized left lateral disc herniation at L4-5 compressing the left L5 and probably L1 nerve root sleeves. (Tr. 20). On August 29, 2003, Plaintiff reported that he was feeling better, but still had some pain in his back and left leg, particularly with lying down. (Tr. 102). Dr. Jain noted that Plaintiff's symptoms were "generally manageable." (Tr. 102). Plaintiff was treated with NSAIDS, Vicodin, Ibuprofen, and Lorazepam, and was referred for physical therapy. (Tr. 20). Dr. Jain

instructed Plaintiff that he should only use Vicodin on a rare basis due to a very high potential for addiction. (Tr. 102). Plaintiff reported some relief with Vicodin and Flexeril. (Tr. 20). His pharmaceutical regimen was later changed to Voltaren and Naprosyn. (Tr. 20). Plaintiff was seen by Dr. Jain approximately every six weeks. (Tr. 20).

On November 14, 2003, Plaintiff reported that he had been doing home exercises and was feeling "somewhat better." (Tr. 100). Even though he still complained of pain in his left leg when standing or walking, the flexibility in his spine improved. (Tr. 100). Mooney declined corticosteroid injections and a referral to a spinal surgeon, stating that his symptoms were generally manageable with the treatment received. (Tr. 20).

When Plaintiff was seen on January 6, 2004, he had no tenderness in the spine. (Tr. 126). Strength and sensation were normal. (Tr. 126). He was able to walk on his toes with difficulty. (Tr. 126). On April 5, 2004, Plaintiff's strength was full in his upper and lower extremities. (Tr. 122). A straight leg raising test was negative, and Plaintiff was able to walk on his toes and heels. (Tr. 122). The strength in his lower extremities was full on May 11, 2004. (Tr. 119).

On February 3, 2005, Dr. Hidaka filled out a physical capacities evaluation form for Plaintiff. (Tr. 132). Dr. Hidaka noted that Mooney could lift and/or carry up to twenty pounds continuously, sit for one hour, but stand and walk for zero hours at one time. (Tr. 20). In an eighth-hour day, however, Plaintiff was found able to sit for three hours, stand for two hours, and walk for one hour. (Tr. 132).

Two state agency physicians found that Plaintiff was able to lift 20 pounds occasionally, 10 pounds frequently, stand for at least two hours in an eight-hour workday or for four hours in 15 to 20 minute increments, and sit for about six hours in an eight-hour day. (Tr. 107-15).

**B.     Plaintiff's Testimony**

At the hearing conducted by the ALJ on February 18, 2005, Plaintiff's attorney was not present. The attorney later indicated that he was absent due to a scheduling mix-up. (Tr. 143). The ALJ informed Plaintiff that it was up to Plaintiff to decide whether he wanted to proceed. (Tr. 147). Plaintiff elected to proceed without his attorney. The ALJ told Plaintiff that the record would be left open for his attorney to submit any argument or additional evidence. (Tr. 147).

Plaintiff testified that he worked for about six months after he was diagnosed with a herniated

disc. (Tr. 20). He was laid off because his physical problems were disrupting his performance of the work duties. (Tr. 20). Plaintiff received unemployment benefits until October 2004, and initially continued to look for work. He was also on state disability until November 2004, and has not looked for work since then. (Tr. 20). Plaintiff testified that he had constant pain in his lower back going up to his neck and the base of his skull and radiating down his left leg to his toes. (Tr. 20). The pain was exacerbated by movement and prolonged sitting, standing, or walking. (Tr. 20). Plaintiff took one Vicodin per day, and one to two Flexeril per week. Plaintiff's medication made him tired. (Tr. 158). Plaintiff, however, rarely took medication for sleep.

Mooney also testified that he could lift 20 to 30 pounds, sit comfortably for 15 to 20 minutes, stand comfortably for 15 minutes, and walk for approximately half a mile with breaks. (Tr. 159). Plaintiff was considering surgery at the time of his testimony, and had an appointment scheduled with an orthopedic clinic at Grossmont Hospital. (Tr. 20).

Plaintiff used cannabis. He used it daily in 2003, and decreased the use to about four times per week in 2004. In 2005, Plaintiff used cannabis two to three times per week. He testified that cannabis helped his muscles relax and did not disrupt his ability to function. (Tr. 20). Plaintiff stated that he spent most of his time at home, and had no outside activities. He usually read and lay around. Plaintiff was able to manage his personal hygiene. (Tr. 20).

**C.    ALJ's Findings**

The Social Security regulations set forth a five-step sequential evaluation process for determining whether a claimant has established her eligibility for benefits. *See* 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(b). If not, the ALJ then must determine whether the claimant's impairments are "severe" within the meaning of the regulations. *See* 20 C.F.R. § 404.1520(c). If the impairments are "severe," then the ALJ must compare the claimant's impairments to the impairments listed in the "Listing of Impairments" set forth in Appendix 1 to 20 C.F.R. § 404. *See* 20 C.F.R. § 404.1520(d). If any "severe" impairment equals a listed impairment, the claimant must be found to be disabled. However, if a "severe" impairment does not equal a listed impairment, the ALJ must determine the claimant's residual functional capacity. If the claimant retains the capacity to perform his or her past relevant work, the

claimant is not disabled. *See* 20 C.F.R. § 404.1520(f).  If the ALJ determines that the claimant can no longer perform past relevant work, the ALJ must consider whether the claimant can perform other work in the national economy.  *See* 20 C.F.R. § 404.1520(g).  If the claimant can perform other work in the national economy, then the claimant may not be found to be disabled.  *Id.*; *see also Batson v. Commissioner of Social Security Administration,* 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In his written decision, the ALJ found that Plaintiff had chronic pain secondary to a herniated lumbar disc with nerve root compression, which is a "severe" impairment.  (Tr. 24).  The ALJ next found that this impairment did not meet or medically equal one of the impairments listed in the regulations.  The ALJ found Plaintiff's pain allegations not totally credible.  The ALJ determined Mooney had the residual functional capacity to lift and/or carry up to ten pounds frequently or twenty pounds occasionally; and sit for about six hours and walk and/or stand for two to four hours in fifteen to twenty minute increments during an eight-hour day.  Mooney was limited to occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, and crawling.  (Tr. 24).  Plaintiff was unable to climb ladders, ropes, or scaffolds and needed to avoid all exposure to vibration and even moderate exposure to hazards.

Dr. Cummings, a vocational expert, also testified at the hearing.  Dr. Cummings characterized Plaintiff's past work as ranging from light to medium in exertional level, and as unskilled to semi-skilled labor.  (Tr. 21).  Based on Plaintiff's residual capacity, Dr. Cummings opined that Plaintiff could not return to his past relevant work.  The ALJ then considered whether there are other jobs existing in significant numbers in the national economy consistent with Plaintiff's residual functional capacity, age, education, and work experience.  (Tr. 21).  The ALJ went through the requirements for sedentary and light work and concluded that Plaintiff was not capable of performing the full range of either sedentary or light work.  The ALJ stated that Plaintiff's "ability to perform all or substantially all of the requirements for sedentary work is impeded by additional exertional and/or non-exertional limitations."  (Tr. 22).

The ALJ asked the vocational expert whether jobs existed in the national economy for an individual of Plaintiff's age, education, past relevant work experience and residual functional capacity.  The vocational expert testified that such an individual was capable of making a vocational adjustment to

other work. (Tr. 22). The vocational expert stated that light jobs administratively noticed by the Commissioner would be precluded, but one hundred sedentary jobs would remain. (Tr. 22). He testified that Plaintiff could work as an order clerk, assembler, or inspector. (Tr. 22). The ALJ therefore found that Plaintiff had the residual capacity to perform a significant range of sedentary work. (Tr. 24). The ALJ therefore concluded that Plaintiff was not disabled. (Tr. 24).

### III. DISCUSSION

Plaintiff moves for summary judgment arguing that the ALJ failed to provide a full and fair hearing to an unrepresented claimant, and that the ALJ improperly evaluated the medical evidence. Plaintiff is not entitled to summary judgment on either ground. Summary judgment should be granted for Defendant.

The Commissioner's decision must be affirmed if supported by "substantial evidence," and if the Commissioner applied the correct legal standards. *Batson*, 359 F.3d at 1193; *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003). "Substantial evidence" is "more than a mere scintilla but not necessarily a preponderance." *Connett*, 340 F.3d at 873. Under this standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record. *See Gallant v. Heckler,* 753 F.2d 1450, 1452-53 (9th Cir. 1984). If evidence exists to support more than one rational interpretation, the Court must defer to the Commissioner's decision. *See Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "To determine whether substantial evidence supports the ALJ's decision, [courts] 'review the administrative record as a whole, weighing both the evidence that supports and [that which] detracts from the ALJ's conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal citation omitted).

### A.   Plaintiff Received a Fair Hearing

The record shows that although Plaintiff did not have counsel present, he received a full and fair hearing. When a claimant is not represented by counsel, the administrative law judge has a duty " 'to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts,' and he must be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.' " *Cruz v. Schweiker,* 645 F.2d 812, 814 (9th Cir. 1981) (citations omitted). A claimant seeking to set aside the administrative law judge's determination must demonstrate prejudice or

unfairness in the proceedings. *Id.* Plaintiff has not demonstrated any prejudice resulting from the hearing conducted in the absence of his counsel.

Plaintiff's counsel, Mr. Sandoval, did not attend the administrative hearing, although the counsel had received the notice of the hearing. (Tr. 147). The ALJ discussed the attorney's absence with Plaintiff. (Tr. 147). The ALJ explained that it was up to Plaintiff whether the hearing was to proceed; and that if Plaintiff chose to proceed, the hearing would go forward with the understanding that Plaintiff's attorney was still counsel of record, and that the record would be left open for two weeks for the attorney to submit any argument or additional evidence. (Tr. 147-48). Plaintiff chose to proceed without his counsel. (Tr. 148). The ALJ then clarified that the decision would be issued not immediately following the hearing, but after the additional two-week period, during which Plaintiff and his attorney would have an opportunity to confer. (Tr. 148). At the end of the hearing, the ALJ told Plaintiff:

> Okay, well, talk with Mr. Sandoval, explain to him what happened, and that I'm keeping the record open. Tell him that I'm waiting for the records from Grossmont, and he'll go back and get that. And then, tell him to communicate with me and tell me what he would like to do.

(Tr. 172). According to Plaintiff's counsel, he was never notified of the two-week extension.

The ALJ's written decision did not issue until approximately three months after the hearing. (Tr. 17). In the meantime, Plaintiff's counsel submitted the report of a recent MRI and a functional assessment from an attending physician, and the supporting chart notes. (Tr. 17). No additional argument was offered. (Tr. 17). Plaintiff acknowledges that this medical evidence was considered in the ALJ's decision.

The above shows that the ALJ was mindful of the absence of representation for Plaintiff. The decision to proceed without counsel was made by Plaintiff himself. The ALJ accommodated any further need to develop or clarify the record by providing Plaintiff with an extension to submit additional evidence or argument. Plaintiff was specifically instructed to talk to his attorney and to tell him that the record would be kept open. Mr. Sandoval apparently took advantage of the extension by submitting additional evidence. Even if Plaintiff failed to inform his attorney specifically that further argument could be presented, there appears to be no reason why the attorney would have believed he was precluded from submitting such argument.

Further, the ALJ fully developed the record at the hearing. The ALJ conducted a detailed inquiry into Plaintiff's work history, symptoms, treatment, and activities. The ALJ also elicited testimony from the vocational expert.

Plaintiff argues that the functional limitations found by the treating physician, Dr. Hidaka, although considered in the written decision, were never presented to the vocational expert at the hearing, and that the hypothetical questions posed to the expert did not include the pain symptoms. Contrary to Plaintiff's assertion, the ALJ did present Dr. Hidaka's findings regarding Plaintiff's functional limitations to the vocational expert. (Tr. 132, 169 ("All right, take a look at Dr. Hidaka's assessment in 5F.")).

Next, the questions posed to the vocational expert were based on all of Plaintiff's symptoms, including his pain.

> [A] hypothetical question should 'set out all of the claimant's impairments. If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value. The most appropriate way to insure the validity of the hypothetical question posed to the vocational expert is to base it upon evidence appearing in the record.

*Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984). As noted above, the vocational expert reviewed the physical limitations found by Dr. Hidaka. (Tr. 132, 169). Plaintiff's physical limitations found by Dr. Hidaka were based, in part, on the pain. (Tr. 129-30). Therefore the limitations caused by the pain were also considered by the vocational expert.

Finally, the ALJ's written decision considered the evidence submitted by Mr. Sandoval after the hearing. (Tr. 17). Based on the above, Plaintiff received a full and fair hearing of his case.

### B.   The ALJ Properly Evaluated the Medical Evidence

The ALJ properly discounted the opinion of Dr. Hidaka. "Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The opinion of the treating physician "is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Thomas v. Barnhart,* 278 F.3d 947, 956-57 (9th Cir. 2002) (citation omitted). If a treating doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it by providing specific and legitimate reasons supported by

substantial evidence. *See id.* "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992).

Dr. Hidaka's opinion is contradicted by the other evidence in the record. Dr. Hidaka found that Mooney could lift and/or carry up to twenty pounds continuously, sit one our, but stand and walk for zero hours at one time. (Tr. 20, 132). In an eight-hour day, however, Plaintiff was found able to sit for three hours, stand for two hours, and walk for one hour. (Tr. 20, 132). Two state agency non-examining physicians found that Plaintiff was able to lift 20 pounds occasionally, 10 pounds frequently, stand for at least two hours in an eight-hour workday or for four hours in 15 to 20 minute increments, and sit for about six hours in an eight-hour day. (Tr. 21, 107-15). Further, on February 3, 2005, the date that Plaintiff's physical assessment form was completed, Dr. Hidaka noted that Plaintiff's "pain [was] better." (Tr. 132, 138). This evidence differs from Dr. Hidaka's conclusions.

The ALJ noted that although Dr. Hidaka found Plaintiff able to stand or walk for zero hours at a time, the doctor found Plaintiff able to walk for one hour and stand for two hours in an eight hour day. (Tr. 20-21). Plaintiff argues that the assessment form only allows the physician to check the physical capabilities in one-hour increments. Therefore a person unable to stand for a full hour would be assessed as a person able to stand for zero hours.

The above explanation, however, does not establish that the ALJ's findings were not supported by substantial evidence. Plaintiff only argues that based on the inadequacies of the form, Dr. Hidaka's opinion was not "necessarily" inconsistent. Substantial evidence, however, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Id.* The explanation was provided by Mr. Sandoval, and not by Dr. Hidaka. The Court notes that the form has sufficient room for handwritten notes. The evaluation form filled out by the state agency physicians also offers limited standardized options for assessing the length of time for certain physical activities: "less than two hours," "at least two hours," or "about six hours." (Tr. 108). There were handwritten clarifications on that form, however, explaining that Plaintiff can stand and/or walk for at least two hours in 15 to 20 minute increments. (Tr. 108). Dr. Hidaka's form offered no similar clarification. Therefore there is

sufficient support for the ALJ's finding that Dr. Hidaka's conclusions were inconsistent.

Further, even if Mr. Sandoval's explanation is correct, the ALJ provided other reasons for discounting Dr. Hidaka's opinion. Although Plaintiff reported some limitation of lumbar flexion and positive straight leg raising on clinical examination, he remained able to walk unassisted and to heel and toe walk. (Tr. 21). Plaintiff's neurological examination remained intact. (Tr. 21). Therefore the ALJ had specific and legitimate reasons to give less weight to the treating physician's opinion.

In addition, the ALJ properly found Dr. Hidaka's assessment to be "internally inconsistent and unsubstantiated by objective clinical findings." (Tr. 20). "[T]he ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion.'" *Magallanes,* 881 F.2d at 751 (citation omitted). As shown above, Plaintiff remained able to walk unassisted and to heel and toe walk. (Tr. 21). Plaintiff's neurological examination remained intact. (Tr. 21). On February 3, 2005, the date that Plaintiff's physical assessment form was completed, Plaintiff's pain was "better." (Tr. 132, 138). These objective findings do not support the limitations assessed by Dr. Hidaka.

Finally, the ALJ properly gave more weight to the opinions of the non-examining physicians. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas,* 278 F.3d at 957 (citations omitted). As Plaintiff points out, the non-examining physicians reviewed Plaintiff's medical records, including Dr. Hidaka's notes. The physicians were aware of Plaintiff's disc herniation and nerve root compression, but noted that the medical evidence showed no problem with sitting and indicated some success with physical therapy and home exercises. (Tr. 100, 115). They also noted that Plaintiff indicated his ability to manage pain and to walk five blocks to the bus stop. (Tr. 83, 103, 106, 115).

The non-examining physicians' findings are consistent with the medical evidence in the record. On August 29, 2003, Plaintiff reported that medication relieved his symptoms and that he felt better overall. (Tr. 102-03). On that date, Dr. Jain found Plaintiff's symptoms to be "generally manageable." (Tr. 100-01). On November 14, 2003, Plaintiff again stated that he was feeling better and that his symptoms were "generally manageable." (Tr. 100-01). Therefore the ALJ properly afforded more

weight to the state agency physicians' conclusions.

Accordingly, the ALJ's conclusions were supported by substantial evidence and were not reached in legal error. Defendant is entitled to summary judgment.

## IV. CONCLUSION AND RECOMMENDATION

Having reviewed the matter, the undersigned Magistrate Judge recommends that Plaintiff's Motion for Summary Judgment be **DENIED**, and Defendant's Cross-Motion for Summary Judgment be **GRANTED**. This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636 (b)(1).

**IT IS ORDERED** that no later than **September 10, 2007**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties within **10 days** of being served with the objections.

**IT IS SO ORDERED.**

DATED: August 27, 2007

_____
**CATHY ANN BENCIVENGO**
United States Magistrate Judge

cc: Hon. M. James Lorenz
    all counsel, parties